HENRY H. TILFORD V. STATE.

No. 24831. June 21, 1950.
Rehearing Denied October 11, 1950.

*W. H. Reid* and *A. S. Baskett,* Dallas, for appellant.

*Will R. Wilson, Jr.,* Criminal District Attorney, *Chas. S. Potts* and *Fred M. Bruner,* Assistants District Attorney, Dallas, and *George P. Blackburn,* State's Attorney, Austin, for the state.

GRAVES, Judge.

Appellant was indicted by a grand jury of Dallas County for an assault to murder one, Roy McDonald. Upon his trial, he was convicted of an aggravated assault and by the jury given a term of 18 months in the county jail and a fine of $500.00, and he appeals.

The facts show that the complaining witness, a man of 67 years of age, lived in Dallas; that on the day of this alleged assault, he left his home about 5:00 o'clock p.m., in his car in company with his four grandchildren, the youngest 2 years old, the next 4 years old, another 6 years old, and the last, Juanita, a girl 9 years old. Appellant seemed to have had some difficulty in passing Mr. McDonald on the road to Irving, and finally got in front of the complaining witness, pulled him out of the car and administered a severe beating to him. It was

claimed that he not only beat McDonald with his hands, but that he kicked and stomped him with his feet, having cowboy boots thereon. Appellant weighed about 250 pounds. According to the doctor, McDonald received multiple injuries as follows:

"The condition of Mr. McDonald, his face and body with reference to bruises, well, he had severe bruises around his forehead, around both eyes, his eyes, both of them, closed, a lot of swelling around both sides of his face; he had *cits* into his mouth, both upper and lower lips, his lip was cut through and through, both upper and lower parts, and due to the loss of blood he was in a moderate amount of shock. Yes, he was conscious. He was able to talk. What I did to him, well, these wounds were—the bleeding was stopped first, then they were cleaned and treated surgically and sutured. He vomited a large amount of blood two or three times while in the emergency room, blood that had evidently gone down into his stomach he had swallowed while there in the emergency room. We started blood transfusions there. Well, we felt he had lost enough blood due to his moderate shock so he could have a blood replacement. The nature of his wounds were—he had deep wounds that extended into his mouth, both upper and lower lips; we felt he had lost enough blood to be serious; I thought they were severe wounds. Having described the bruises and abrasions, the cut on Mr. McDonald's lips, also the shock that he was in at the time he got there and the loss of blood and vomiting, whether these wounds could have caused death unattended by a physician, I feel like if he had continued to have bled he would have bled himself out. In my opinion he could have died. Where on his head the other bruises that I found were about both eyes, his forehead and almost his entire face; both eyes were swollen closed, and his face was very discolored with bruises, deep bruises. Most of the bruises were on the front part of his face, this part, and extending down either side. Most of his bruises and cuts were on the front part of his face. We gave him one pint of blood. We released him the next day. We X-rayed his face and his skull. We found no fractures of his face nor his skull."

This assault was witnessed by other disinterested witnesses and from their testimony, the brutality thereof is manifest, as well as the seriousness of the injuries.

Appellant denies much of the state's testimony, he claiming that on account of the erratic driving of McDonald, he turned around and followed him, eventually getting in front of him, and leaving his (appellant's) car, he went back for the purpose

of helping the old man, who immediately began kicking and fighting; that appellant, in his own necessary self-defense, struck McDonald, but did not kick him. The jury seems not to have given credence to such testimony.

Bill of Exception No. 1 complains of the fact that the nine-year-old grandchild, Juanita, of the complaining witness, was allowed to testify herein. The careful trial court, prior to her testifying, elicited from her the following statement:

"I am nine years of age. I am a grand-daughter of Roy McDonald. I am in the low fourth grade in school-*twelve*. Yes, I know what it means to tell the truth. Yes, I know what an oath is, to tell the truth, nothing but the truth. Yes, sir, I have taken that oath here yesterday. I was sworn in yesterday. What will happen to me if I don't tell the truth, I will go to the bad man. Yes, I know it is wrong not to tell the truth."

We are impressed with the fact that this little girl was qualified to give her testimony in this cause, and a perusal thereof in the statement of facts confirms such impression. As was said in appellant's cited case of Williams v. State, 12 Tex. App. 127, "the preliminary examination thus requisite is usually undertaken exclusively by the court, and it is said that it will require a strong case to sustain a reversal of the ruling of the court examining such a witness." [Wharton's Crim. Evidence, (8th Ed.,) sec. 368.]

Bill of Exception No. 2 complains of the testimony of the witness McDonald in which it was shown that the four small children were with him in the car at the time he received these injuries at the hands of the appellant. These children were then brought in and appeared about 24 feet from the jury box and identified by McDonald as the ones who were with him and they were immediately retired. The testimony referred to them and especially to the little girl, Juanita, and the qualification of the bill shows that they were not paraded before the jury; that they were not asked any questions at such time and that they were then placed back under the rule. We see no harmful error in such proceedings.

Bill No. 3 relates to a statement made by the witness, Clifford Evans, relative to the acts of the little nine-year-old Juanita at the scene of the trouble. It appears from his evidence that this child was out of the car while the fighting was going on and was trying to shield her grandfather with her body while he was on the ground. The witness was asked, "What was she say-

ing" and he said, the girl was saying, "Stop him. He is killing my granddaddy. Tell him to quit." We think this was res gestae of this transaction. See Tischmacher v. State, 153 Tex. Cr. R. 481, 221 S.W. (2d) 258. Both parties were present, as well as others, who heard this statement. In truth, there is further testimony evidencing the fact that appellant jerked this child aside and continued to assault the prone McDonald.

The opinion is expressed that these injuries herein enumerated were serious and could have resulted in death without early proper attention.

The judgment will be affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

The exceptions and objections appearing in this record do not bear the approval of the trial court. In the absence of such, no exceptions or objections to the charge appear to have been preserved.

Appellant's contention that the charge was erroneous in the particulars now insisted upon is not before us.

We remain convinced that reversible error is not reflected.

Appellant's motion for rehearing is overruled.

Opinion approved by the court.